IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE LETTER OF REQUEST ) | |
| FROM ITALY ) | |
| IN THE MATTER OF ) | Misc. No. 07- |
| FERRERI, ET AL ) | |

**GOVERNMENT'S MEMORANDUM OF LAW**
**IN SUPPORT OF APPLICATION FOR ORDER**

This memorandum of law is submitted in support of the Application for an Order pursuant to Title 28, United States Code, Section 1782, in order to execute a letter of request from Italy. A copy of the translation is attached.

FACTUAL BACKGROUND:

This investigation is being conducted by the Italian authorities who are investigating a case of alleged tax evasion conspiracy involving communications fraud, securities violations and money laundering.

EVIDENCE SOUGHT:

The Italian authorities seek information from the Delaware Secretary of State's Office and an individual who may reside in this District. The authority for this Court to accede to this request is contained in Title 28, United States Code, Section 1782, which states in part:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a

foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in <u>In Re Request for Judicial Assistance from the Seoul District Criminal Court</u>, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, "(t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." <u>In Re Letter of Request from the Crown Prosecution Services of the United Kingdom</u>, 870 F.2d 686, 687 (D.C. Cir. 1989).

The letter of request in this case shows that the

information sought is for use in such proceedings in Italy and hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled <u>ex parte,</u> and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE**, the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____
David L. Hall
Assistant U.S. Attorney
1007 Orange Street
Wilmington, DE   19801
(302) 573-6277

Dated: 3/15/07

Case No 6429-06 R.G.N.R./Form.21 (D.A.)



## OFFICE OF THE DISTRICT ATTORNEY
### At the Court of Rome

To the Attorney General
of the United States of America

To the Justice Department
Second Office Criminal Affairs
Rome

**REQUEST FOR JUDICIAL ASSSITANCE IN CRIMINAL MATTER FILED PURSUANT TO THE TREATY BETWEEN ITALY AND THE UNITED STATES OF AMERICA GOVERNMENT SIGNED IN ROME ON 09.11.1982 (RATIFIED ON 13.11.1985)**

### PREAMBLE

We are two Assistant Italian Public Prosecutors at the Court of Rome, Mr Giovanni Di Leo and Mrs Francesca Passaniti. We are making inquiries about the criminal case no. 6429-06 R.G.N.R., against numerous persons having the office of directors of quoted companies, for the crimes of conspiracy to defraud against the provisions regarding the Value-Added Tax matters and linked with the crimes of falsehood in social communications and obstacle to the functions of the Authorities supervising the Stock Market (Consob), as well as laundering, abroad and specifically in a country of Central America, of the money deriving from tax avoidance.

Specifically, the alleged counts we are proceedings against, which are provided for in the Italian rules and we are enclosing a copy of, are:

- *art. 110 C.P.* (punishment for those who participate in an offence);
- *art. 416 C.P* (conspiracy);
- *art. 2622 C.C.* (falsehood in social communications);
- *art. 2638 c.c.* (obstacle to the functions of the Public Supervising Authorities);
- *art. 2 D.Lgs. no. 74/2000* (false tax-return by means of invoices or other documents regarding non existing operations;
- *art. 5 D.Lgs. no. 74/2000* ( tax-return not filed);
- *art. 8 D.Lgs. 74/2000* (issue of invoices regarding non existing operations) ;

 Procura della Repubblica presso il Tribunale Ordinario di Roma

N.6429/06 R.G.N.R./Mod.21

- **art. 10 D.Lgs. 74/2000** *(concealment or destruction of accounting records);*
- **art. 648-bis C.P.** *(money laundering);*

For a better understanding of the matter:

### SUMMARY OF FACTS

Following the investigations in connection with alleged very serious serial frauds committed by using cellphone communication systems (short messages services), which invited people to get in touch with some telephone numbers involving the application of special payment rates, relevant money movements between the following companies C.M.C. Italia s.r.l., WEB WIZARD S.R.L., TELEFOX S.R.L. were discovered. These companies were partly under FERRERI Antonio, and FASTWEB s.p.a., a company quoted in the Milan Stock Market and the total sum of the above-mentioned money movements amounted to over 250 million Euros.

As a matter of fact, from the present status of the inquiries it emerges that FASTWEB S.p.a. paid to C.M.C. Italia S.r.l. and WEB WIZARD S.r.l., the following sums of money:

**(a)** Year 2002:
- ➢ to **C.M.C. Italia S.r.l.**:
  - Euros **34,121,183.26** ( to current account ▮▮▮▮)

**(b)** year 2003:
- ➢ to **C.M.C. Italia S.r.l.**:
  - Euros **19,897,572.63** (to current account ▮▮▮▮)
  - Euros **162,995,444.28** (to current account ▮▮▮▮)
- ➢ to **WEB WIZARD S.r.l.** :
  - Euros **35,906,538.22** (to current account ▮▮▮▮)
  - Euros **2,522,955.34** (to current account ▮▮▮▮)



Seemingly the huge movement of capitals was justified by the execution by Fastweb s.p.a. of an agreement in relation to the sale of some magnetic cards which could be used to obtain non specified internet services. These items, at least from a formal point of

 Procura della Repubblica presso il Tribunale Ordinario di Roma     N.6429/06 R.G.N.R./Mod.21

view, were produced and manufactured in Italy and then sent for distribution to the United States and the United Kingdom.

Seemingly this sale took place by virtue of licence rights transferred from Web Wizard s.r.l , a company under FERRERI, to C.M.C. s.r.l., whose partner and director was Antonio FERRERI himself. Seemingly Web Wizard s.r.l., in his turn, purchased the right to sell the above-mentioned cards, called "Phuncards", from the American company **WTS Worldwilde Telecommunication Services LLC, its registered office at 15, East North Street, Dover, Delaware 19901, U.S.A.**.

However, from the bank investigations carried out in Italy factual elements emerged which make us think that the whole operation was fictitious and had the only purpose to create a relevant VAT credit in the amount equivalent to 34,000,000 Euros in favour of FASTWEB s.p.a., that at the time was already quoted in the Stock Market and a little later merged with the company controlling E.BISCOM SpA, as well as to make the margin profit of the activity carried out a 10% greater that it actually was and to fraud the Italian Finance Department and the transparency of the Stock Market and the investors.

Specifically the investigations carried out by the Financial Police ascertained the following money flows:

Procura della Repubblica presso il Tribunale Ordinario di Roma          N.6429/06 R.G.N.R./Mod.21



As a matter of fact, when the bank requested Antonio FERRERI, director of C.M.C. Italia S.r.l. the reasons of the above-mentioned big and suspect movements of capitals, in a report to clarify the matters he justified said movements as follows:

(1) *"seemingly the business between FASTWEB S.p.a. (client) C.M.C. ITALIA S.r.l. (supplier) and FULCRUM TRADING US (distributor)>> are <<in connection with*:

(a) <u>payments received by FASTWEB S.p.a.</u>, *referring to a sale of goods ( plastic supports) and provided services ( Internet access code) for which regular invoices are issued;*

(b) <u>transfers between CMC Italia and the controlled Web Wizard S.r.l.</u>, *that is, as by agreement, a structure manufacturing the goods object of the transactions;*

(2) *Web Wizard, whose the purpose to increase its flow of money , <u>channels the proceeds of its own sales to Fulcrum Trading US, ...omissis... a company fully controlled by Fulcrum Electronics UK.</u> >>"*.

In the above-mentioned report anything is said neither about the real business carried out by FULCRUM TRADING US nor the role of WEB WIZARD S.r.l.

(mentioned as a manufacturer of the products intermediated by C.M.C. Italia S.r.l. and as a company causing the financial flows to FULCRUM TRADING US, distributor of the aforesaid products), while non specified commercial advantages are pointed out, deriving from the above-mentioned procedure, as well as the long term relationship between C.M.C. Italia S.r.l. and FULCRUM TRADING US, notwithstanding C.M.C. Italia S.r.l. has recently been set up.

Besides including to his report a *"loan and security agreement"* between WEB WIZARD S.r.l. and FULCRUM US, dated 23.09.03 (drawn up in English and probably in connection with a loan), FERRERI also included, probably in order to justify the bank flows between the two companies, together with other documents, a licence without contract of agency, dated 05.01.2003, given from WEB WIZARD S.r.l. to C.M.C. Italia S.r.l. (both run by FERRERI) to sale *"PhunCards"* issued under licence of American W.T.S. LLC., ( in it WEB WIZARD S.r.l. gives a commision of 1% on the sales to C.M.C. Italia S.r.l.), thus to justify the bank flows between the companies.

This licence without contract of agency seems contrary to Ferreri's report as in the aforesaid report there is no mention about the role of distributor of FULCRUM TRADING US; on the other hand, in order to explain, on request of the bank, the big flow of money from the current account of WEB WIZARD S.r.l. to the current account of TELEFOX S.r.l., Antonio FERRERI, delivered another distribution agreement to Antonveneta Bank, signed between WEB WIZARD S.r.l. and TELEFOX S.r.l. on 03.01.03 . In this agreement it emerged that is was TELEFOX S.r.l. to be : <<*in possession of the title for the distribution of the products and services of WTS Worldwilde Telecommunication Services LLC company, its registered office at 15, East North Street, Dover, Delaware 19901, U.S.A.*>> and by virtue of this WEB WIZARD was authorized to sale "*Phun Cards*".

In the agreement there were a lot of "convincing" clauses among which also those in relation to the payment, production bonuses, privacy clauses as well as prohibitions to transfer the agreement without the prior consent of TELEFOX srl.

Seemingly, according to this agreement most of the proceeds deriving from the sale of *Phuncards* by WEB WIZARD S.r.l. had to be channelled (deducted the profits of WEB WIZARD S.r.l. ) to TELEFOX S.r.l., that in its turn had to channel them to a non specified company, once the profits of TELEFOX S.r.l. had been deducted.

Contrary to what FERRERI claimed in the above-mentioned reports to Antonveneta Bank, from the documents filed by FASTWEB S.p.a at this Office, in order to explain the economic relationship with C.M.C. Italia S.r.l, from the bank verifications and from Bruno ZITO's statements, a sales manager of FASTWEB S.p.a., it emerged that on 05.01.2003 C.M.C. Italia S.r.l. had given a licence without contract of agency to FASTWEB S.p.a. to sell pre-paid cards (called "PhunCards"), issued on licence of an American non specified company called GLOBAL TELEPHONE SERVICE LLC, (*however a company different from WTS Worldwilde Telecommunication Services LLC, its registered office at 15, East North Street, Dover, Delaware 19901, U.S.A.*. By means of these cards the right to benefit, via Internet, from digital contents protected by copyright or other intellectual or industrial copyright could be paid in advance.

Documentary bank and accounting investigations, carried out up to now, have stressed that payment orders from FASTWEB S.p.a. to C.M.C. Italia S.r.l. do not tally with the amounts calculated on the ground of the purchase orders for *Phuncards*, sent from FASTWEB S.p.a. to C.M.C. Italia S.r.l. and WEB WIZARD

Procura della Repubblica presso il Tribunale Ordinario di Roma

N.6429/06 R.G.N.R./Mod.21

S.r.l., which would be much fewer than the sums of money really paid by FASTWEB S.p.a. to the above-mentioned companies.

Then the performed investigations make us think that in relation to the sale of the aforesaid " Phuncards" the following operation was carried out, at least in the fiscal year 2003:

- in the period of time ranging from 28.02.2003 to 13.11.2003 C.M.C. Italia S.r.l. and WEB WIZARD S.r.l. sold FASTWEB S.p.a. *Phuncards* for the taxable amount equivalent to Euros 169,669,982.93 and VAT equivalent to Euros 33,933,796.59 (for a total amount equivalent to Euros 203,602,779.52 invoiced and Euros 3,603,112,56 transferred);

- in the period of time ranging from 28.02.03 to 14.11.03 FASTWEB S.p.a. sold FULCRUM TRADING USA, LBB TRADING LTD (United Kingdom) and PREMIER GLOBAL TELECOM LTD (United Kingdom) *Phuncards* for the amount equivalent to Euros 182,439,708.86 (182,393,419.68 really transferred), without charging VAT, for the lack of territorial requisite pursuant to art. 7 of D.P.R. 633/72;

- in the period of time ranging from 24.02.2003 to 21.11.2003 C.M.C. Italia S.r.l. and WEB WIZARD S.r.l. transferred FULCRUM TRADING USA, LBB TRADING LTD (United Kingdom) and PREMIER GLOBAL TELECOM LTD (United Kingdom) a total amount equivalent to Euros 179,329,901.82. This is the amount, which has for the moment been ascertained, but probably it is not the final one ;

- later and at the same time of all the above-mentioned operations, in the period of time ranging from 13.03.03 to 21.11.03 WEB WIZARD S.r.l. transferred a total amount equivalent to Euros 35,118,088.00, ascertained but probably not the final amount, to TELEFOX S.r.l., with which WEB WIZARD S.r.l. seemingly signed a distribution agreement on 03.01.2003, already mentioned above.

On 12.12.03, when FERRERI learned about the investigations in connection with the use of premium numbers, he, who should have been the main operator of the sector, as he was in possession through his companies of the sale rights for the precious "Phuncards", "disappeared".

As a matter of fact:

- C.M.C. Italia S.r.l. and WEB WIZARD S.r.l. closed down, moving their registered offices to the United Kingdom (UK) - Countymark House - 223, Regent Street - London W1B 2QD. They did not file (according to the bank data of the Tax Register) both their tax-returns for the year 2003 ( without paying VAT, which according to the sales of *Phuncards* amounted to Euros 33,933,796.59), and the balance sheet/statement of realization and liquidation for the year 2003.

When the accounting records of C.M.C. Italia s.r.l. were requested to be seized, Antonio FERRERI claimed that they had been sent to London (Great Britain) and he was waiting that the holder could send them to these Judicial Authorities;

On the same date also TELEFOX S.r.l. closed down, claiming that the reason of its closing was "the transfer of its head office to Panama c/o the legal firm Cajigas & Co. P.O. box 6354", and did not file (according to the bank data of the Tax

 Procura della Repubblica presso il Tribunale Ordinario di Roma     N.6429/06 R.G.N.R./Mod.21

Register) both its tax-returns for the year 2003 and the balance sheets/statements of realization and liquidation for the year 2003.

Actually the companies, which were run by FERRERI and had had with FASTWEB s.p.a. the financial and economic relationship summarily described above, left the country making the accounting records and any further reference unavailable, they also omitted to perform any financial obligation for the year 2003.

From all the above-mentioned operations this Office has come to the conclusion that the operations performed between the Italian companies and those which have their head offices in the United States and the United Kingdom are actually non existing commercial transactions. They have been carried out only to take advantage from the fiscal system through the fact that the exportations outside the European Community territory are not liable to VAT, thus these companies made great profits from the difference between the VAT paid in Italy and the non collection of VAT on the sales abroad by FASTWEB s.p.a.. Thus they allow the above-mentioned company, as said above, to:

- have a credit against the Italian Inland Revenue (Tax Authorities) of an amount equivalent to about Euros 34 million
- to file the balance sheet increased of over 10% and with a profit margin widely improved.

For what said above, we need to request to the relevant Judicial Authorities of the United States of America to make the following inquiries:

**REQUESTS**

A) for GLOBAL TELEPHONE SERVICE LLC, an American company whose head offices are for the time being unknown :

1. to verify the factual existence and actual status of the company (still operating, closed down, gone bankrupt, etc..);
2. to obtain personal details of the legal representatives and partners, at present and in 2003, as well as, to check the offices (tasks) of the legal representatives and partners of the companies investing capitals in the business ;
3. to ascertain the real business carried on ;
4. to verify the possession and authorizations for the issue of the "*Phuncards*";
5. to determine the real existence on the market of said items, the internet services they give access to, as well as their price;
6. to obtain/seize the documents in connection with the real sale of the *Phuncards*, from which the channels and the intermediaries that are used (sales to other wholesalers, retail sale) may be learned;
7. to obtain full personal details of those who created the Internet www.Phuncards.com web site;
8. to obtain/ seize the accounting and bank documents indicating the nature and object of the relationship with the Italian companies WEB WIZARD S.r.l. , C.M.C. Italia S.r.l., FASTWEB S.p.a., TELEFOX S.r.l., as

Procura della Repubblica presso il Tribunale Ordinario di Roma               N.6429/06 R.G.N.R./Mod.21

well as the American companies FULCRUM TRADING US INC. e W.T.S. (WORLDWILDE TELECOMMUNICATION SERVICES) LLC and the English companies LBB TRADING LTD e PREMIER GLOBAL TELECOM LTD in the years 2003/2004. And to identify the persons who had the power to use the current accounts to transfer funds received from the Italian companies;

B) for W.T.S. (WORLDWILDE TELECOMMUNICATION SERVICES LLC), its registered office at 15, East North Street, Dover, Delaware 19901, U.S.A:

1. to verify the factual existence and the current status of the company (still operating, closed down, gone bankrupt, et...);
2. to obtain the personal details of the legal representatives and partners, at present and in 2003, as well as, the fees of the legal representatives and partners of the companies investing capitals in the business;
3. to ascertain the real business carried on (object of the company);
4. to verify the possession of licenses and authorizations for the issue of the "*Phuncards*";
5. to determine the real existence of these items on the market, of the Internet services they give access to, as well as their price;
6. to obtain/seize the documents in connection with the real sale of the Phuncards, from which the channels and the intermediaries that are used (sales to other wholesalers, retail sale) may be learned;
7. to obtain full personal details of those who created Internet www.Phuncards.com web site;
8. to obtain/seize the accounting and bank documents indicating the nature and object of the relationship in the years 2003/2004 with the Italian companies WEB WIZARD S.r.l., C.M.C. Italia S.r.l., FASTWEB S.p.a., TELEFOX S.r.l., as well as the American companies FULCRUM TRADING US INC. e W.T.S. (WORLDWILDE TELECOMMUNICATION SERVICES) LLC and the English companies LBB TRADING LTD e PREMIER GLOBAL TELECOM LTD, in the years 2003 and 2004. In any case to identify the persons who have the power to use the current accounts of the company if transfers of the funds received from the Italian companies have been performed;

C) for FULCRUM TRADING US INC., located in Nevada (USA), 50 West Liberty Street Suite 1020, Reno, NV Usa 80501, (Federal TAX ID ███████

1. to verify the factual existence and the current status of the company (still operating, closed down, gone bankrupt, etc...);
2. to obtain the personal details of the legal representatives and partners, at present and in 2003, as well as, the fees of the legal representatives and partners of the companies investing capitals in the business;
3. to ascertain the real business carried on;
4. to verify the possession of licenses and authorizations for the issue and/or distribution of the "*Phuncards*";
5. to determine the real existence of these items on the market, of the Internet services they give access to, as well as their price;

Procura della Repubblica presso il Tribunale Ordinario di Roma

N.6429/06 R.G.N.R./Mod.21

6. to obtain/seize the documents in connection with the real sale of the Phuncards, from which the channels and the intermediaries that are used (sales to other wholesalers, retail sale) may be learned;

7. to obtain/ seize the documents indicating the nature and object of the possible relationship with the Italian companies WEB WIZARD S.r.l., C.M.C. Italia S.r.l., FASTWEB S.p.a., TELEFOX S.r.l., with the American companies (WORLDWILDE TELECOMMUNICATION SERVICES) LLC e GLOBAL TELEPHONE SERVICE LLC and with the English companies LBB TRADING LTD e PREMIER GLOBAL TELECOM LTD, in the years 2003/2004;

8. to obtain/seize the documents indicating the nature and the object of the specific relationship with :

   - with the Italian company WEB WIZARD S.r.l., from which Fulcrum Trading US Inc. has received transfers for a total amount equivalent to Euros 119,015,668.33, in the period of time from 25.09.03 to 14.11.03 and to which the above-mentioned company made transfers for an amount equivalent to Euros 3,397,082.81, divided in two transfers dated 27.10.03 and 21.11.03 respectively;

   - the Italian company FASTWEB S.p.a. (former fiscal code ███████, from which Fulcrum Trading US Inc. has received invoices for the purchase of Phuncards for an amount equivalent to Euros 111,883,976.27 in the period of time from 24.09.03 to 13.11.03 (and to which the above-mentioned company has made transfers for an amount equivalent to Euros 111,852,204.25 in the period of time from 24.09.03 to 14.11.03)

9. to control by the relevant Customs Authorities and Fiscal Authorities the fulfilments in connection with the purchase transaction of the above-mentioned Phuncards by Fulcrum Trading Us Inc. that had bought them from FASTWEB S.p.a.;

We thank you for your kind collaboration since now and request to be immediately informed in case of negative answers to the points from 1 to 7 of the aforesaid requests. We reserve the right to request by means of a later rogatory letter to hear the identified persons according to the procedure provided each time by the provisions and the treats in force.

Rome, June 20, 2006

               ASSISTANT ITALIAN DISTRICT ATTORNIES
Signed:          *Mr Giovanni Di Leo – Mrs Francesca Passaniti*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

IN RE LETTER OF REQUEST      )
FROM ITALY                   )
IN THE MATTER OF             )   Misc No. 07-
FERRERI, ET AL               )

### ORDER

Upon application of the United States of America; and upon examination of a letter of request from Italy whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in Italy and the Court being fully informed in the premises, it is hereby

**ORDERED**, pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from the Italian authorities as follows:

   1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

   2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party shall be required);

   3. adopt procedures to collect the evidence requested

consistent with its use as evidence in a proceeding before a Court in Italy;

    4. seek such further orders of this Court as may be necessary to execute this request; and

    5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Italian authorities.

    IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

    Dated: This _____ day of _____, 2007.

_____
United States District Court Judge